IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEYSTONE REGIONAL              :
VOLLEYBALL ASSOCIATION         :
                               :    CIVIL ACTION
v.                             :    NO.  21-4268
                               :
SPORTSENGINE, INC.             :

## MEMORANDUM OPINION

**SCHMEHL, J.**  /s/ JLS                                         May 13, 2022

      Keystone Regional Volleyball Association complains that SportsEngine, Inc.'s change to a software program breaches the parties' contract, and the change runs contrary to Pennsylvania's statute criminalizing child endangerment. However, the parties' contract has an enforceable arbitration clause, and Pennsylvania's child endangerment statute does not provide a private civil cause of action or anything else that advances plaintiff's claim. Defendant's Motion to Compel Arbitration is Granted.

**I.      FACTUAL BACKGROUND**

      Plaintiff Keystone Regional Volleyball Association holds a membership within USA Volleyball, which is the National Governing Body for the sport of volleyball in the United States. Defendant SportsEngine created and operates the software for USA Volleyball in which regional volleyball associations sign up and manage their team data. In an agreement between SportsEngine and USA Volleyball, USA Volleyball and its member organizations, i.e. plaintiff, may use SportsEngine's software to register and manage their teams and players. Each member organization must assent to the software's contractual Terms of Use before being permitted to use the software, as Keystone did.

Recently, SportsEngine, purportedly together with USA Volleyball, changed how the software operates. The previous version of the software operated in a manner where individuals who were banned by Safesport, an organization enabled by statute to protect young individuals from sexual abuse, could not access team or player data without first obtaining approval. Then to plaintiff's displeasure, SportsEngine changed the software to where individuals who are not approved by Safesport or not affiliated with a team or organization can access team and minor volleyball players' data. Keystone complains that this change puts minor volleyball players' information such as their names and addresses at risk.

After the software change, plaintiff made complaints to SportsEngine and USA Volleyball, but to no permanent avail. "Afterwards, [plaintiff] continued communication with [defendant] and USAV to remedy 'loopholes' [plaintiff] discovered in the software, amongst other issues. However, [defendant] ultimately denied [plaintiff's] concerns for various reasons but kept in contact with [plaintiff] in their effort to resolve the various issues." (Complaint, at ¶34-5.)  Ultimately, the new software is the current governing software for USA Volleyball, Keystone, and all other regional volleyball associations.

Plaintiff summarizes its own claims: "[Defendant] has made a gravely flawed 'business decision' that its falsely inflated concerns about the number of customer support tickets generated within the Keystone Region are more important than preventing Safesport ineligible person(s) from having access to a 'customer list' of minor children who they can contact directly, solicit and groom for improper purposes." (*Id.* at ¶61.) Plaintiff does not plead that instances of abuse, improper contact, or anything of the like has occurred. While not explicitly stated in plaintiff's complaint, plaintiff's counsel confirmed at oral argument that plaintiff's sole Count is for Breach of Contract.

Plaintiff and defendant "are parties to a written contract." (*Id.* at ¶11.) This contract is the Terms of Use for SportsEngine's software. The contract dictates who may use the software, in what manner, what rights and responsibilities each party has, the remedies available, and other typical contract clauses. Within the contract is an arbitration provision which the Court expounds on below. Presently, defendant Motions to Compel Arbitration, or alternatively, to Dismiss.

## II.     STANDARD OF REVIEW

"[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 772 (3d Cir. 2013). Plaintiff brings one Count for Breach of Contract, attaches the contract in question to its complaint, and does not argue against the applicability of the 12(b)(6) standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

In our analysis of a motion to dismiss, the Court of Appeals allows us to also consider documents "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

### III.   ANALYSIS

The Federal Arbitration Act provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. A party to the contract who is "aggrieved by [the other contracting party's] failure, neglect, or refusal . . . to arbitrate under a written agreement . . . may petition [the] district court" "for an order directing that such arbitration proceed in the manner provided for in [the] agreement." 9 U.S.C. § 4. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 190 (3d Cir. 2009) ("It

is well established that the Federal Arbitration Act (FAA), reflects a strong federal policy in favor of the resolution of disputes through arbitration.") (quotation omitted).

Plaintiff and defendant "are parties to a written contract." (ECF #1-4, Complaint, ¶11.) The arbitration provision at issue is derived from the Terms of Use that plaintiff assented to when signing up for defendant's software. The plain and unambiguous arbitration provision at issue is as follows:

> READ THIS SECTION CAREFULLY BECAUSE IT REQUIRES THE PARTIES TO ARBITRATE THEIR DISPUTES AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM SportsEngine. For any dispute with SportsEngine, you agree to first contact us at support@sportsengine.com and attempt to resolve the dispute with us informally. **In the unlikely event that SportsEngine has not been able to resolve a dispute it has with you after sixty (60) days, we each agree to resolve any claim, dispute, or controversy (excluding any claims for injunctive or other equitable relief as provided below) arising out of or in connection with or relating to this Agreement, or the breach or alleged breach thereof (collectively, "Claims"), by binding arbitration by JAMS, Inc. ("JAMS"), under the Optional Expedited Arbitration Procedures then in effect for JAMS, except as provided herein1.** JAMS may be contacted at www.jamsadr.com. The arbitration will be conducted in Hennepin County, Minnesota, unless you and SportsEngine agree otherwise. If you are using the Service for commercial purposes, each party will be responsible for paying any JAMS filing, administrative and arbitrator fees in accordance with JAMS rules, and the award rendered by the arbitrator shall include costs of arbitration, reasonable attorneys' fees and reasonable costs for expert and other witnesses. If you are an individual using the Service for noncommercial purposes: (i) JAMS may require you to pay a fee for the initiation of your case, unless you apply for and successfully obtain a fee waiver from JAMS; (ii) the award rendered by the arbitrator may include your costs of arbitration, your reasonable attorney's fees, and your reasonable costs for expert and other witnesses; and (iii) you may sue in a small claims court of competent jurisdiction without first engaging in arbitration, but this does not absolve you of your commitment to engage in the informal dispute resolution process. Any judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction. **Nothing in this Section shall be deemed as preventing SportsEngine from seeking injunctive or other equitable relief from the courts as necessary to prevent the actual or threatened infringement, misappropriation, or violation of our data security, Intellectual Property Rights or other proprietary rights.**

(Complaint, Ex. 3, Section 9.2.) (bold added)

The arbitration provision is applicable to this controversy given that this suit is for breach of contract, arbitration applies to "any claim, dispute, or controversy . . . arising out of or in connection with or relating to this Agreement, the breach of alleged breach thereof," and the controversy at issue involves software being administered throughout the country thereby invoking interstate commerce.

Plaintiff does not raise any common law contract defense to the arbitration provision but makes two arguments against compelling arbitration. First, plaintiff argues that the right within the arbitration provision that confers SportsEngine with the right to seek preliminary injunctive relief before arbitration should also be provided to plaintiff. Second, given the nature of plaintiff's allegations coupled with Pennsylvania's Child Endangerment statute, this Court should permit the case to proceed without arbitration. These arguments are without merit.

As plaintiff admits in its complaint, the arbitration provision provides defendant with the right to pursue injunctive relief before arbitration to protect defendant's intellectual property rights and other proprietary rights. (*See* Complaint, ¶65.) Plaintiff plainly pleads that it "is exercising that same right herein." However, this right is explicitly provided to defendant and defendant only. The arbitration provision states "[n]othing in this Section shall be deemed as preventing [defendant] from seeking injunctive or equitable relief . . . ." Defendant obtained this bargained-for-term, not plaintiff. Plaintiff's plain statement that they are now exercising this right is quite clearly contrary to the contract's unambiguous language. Thus, only defendant may seek injunctive or equitable relief before arbitration, not plaintiff.

Plaintiff's second argument is that Pennsylvania's Child Endangerment statute provides this Court with a public policy avenue for adjudicating this case irrespective of the arbitration provision. *See* 18 Pa. C.S. § 4304. Specifically, plaintiff argues that defendant "in coordination

with USAV, created a situation where [plaintiff] and its minor athletes, as well as USAV, and [defendant] itself, are all placed at risk under 18 Pa. C.S. § 4304."

Pennsylvania's statute criminalizing the endangerment of children is a criminal statute that does not provide a private civil cause of action. Plaintiff's argument that the underlying policy behind the statute provides this Court with the ability to somehow provide plaintiff with a cause of action is unsupported by law. First, plaintiff does not even plead a cause of action under the statute in its complaint. Second, courts have found that the statute does not provide a private civil cause of action.

In *Doe 203 v. Archdiocese of Philadelphia*, the court dismissed a civil cause of action under 18 Pa C.S. § 4304. 31 Pa. D. & C. 5th 83. The court held that the statute does not explicitly nor implicitly provide a private cause of action, the Pennsylvania legislature had forty-years to create a private cause of action but showed no indication of doing so, and despite the fact that the statute protects the general public and seeks to prevent child endangerment, that purpose does not support a private civil cause of action. *Id.* at *6-8. Simply put, plaintiff's references to Pennsylvania's criminal child endangerment statute does not advance any of its claims nor gets plaintiff around the arbitration provision.

IV.   **CONCLUSION**

For all the reasons set forth above, this Court is satisfied that this issue is "referable to arbitration," and therefore, this action is stayed "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Defendant's Motion to Compel is Granted. An accompanying Order follows.

                                          **BY THE COURT:**

                                          */s/ Jeffrey L. Schmehl*
                                          **JEFFREY L. SCHMEHL, J.**